The next case for argument is Cloud v. McDonough, No. 23-1846. When you're ready, Mr. Carpenter, take your time. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Cloud. The issue in this case deals with the overlap between two different VA regulations. They are in the same statutory, or excuse me, regulatory section of 3.105. But one is in subchapter, or excuse me, subparagraph A, and the other is in subparagraph D. We believe that error was made by the lower court in relying upon the criteria in A rather than the criteria that exist in D. In D, which is the applicable regulation in this case, a service connection will be severed only where the evidence establishes that it was clearly and unmistakably erroneous to have made that grant in the first instance. The lower court, in our view, made an error of law in assuming that because of the similarity of the language, that is to say, clear and unmistakable error in A and clearly erroneous, excuse me, clearly and unmistakably erroneous in D, that the criteria for A, as established by this Court's case law and by its own case law, was the applicable criteria. We believe that these are two separate and distinct regulations and that one regulation cannot be imputed into the other to dictate whether or not the burden of proof, in this case of the government, had been met. In this case, the regulatory requirements were amended prior to the decision of the agency on this question. The most recent versions of both of those regulations were amended in February of 2019 and were applicable for the decision in this matter. The lower court, or excuse me, the proceedings were commenced before the agency based upon an administrative decision. That administrative decision is found in the record. I want to make sure I understand the issue that you're presenting to us. I've understood from your brief at page one, the sole issue is whether there was a misinterpretation of 3.105D. D, correct. And D, you say, requires clear and unmistakable error.  Well, help me, but my understanding of your issue is you say that 3.105D requires the government, when it severs benefits, to show there was a clear and unmistakable error in granting the benefits that it now wants to sever. Is that the issue or that's not the issue? Well, that is the issue generally. More specifically, it is whether or not the plain language of D requires evidence to base the severance on that the original award was clearly and unmistakably erroneous. And that is not defined by the regulation. When the VA amended its regulation in A, it provided a definition for clear and unmistakable error. The term clear and unmistakable error is not used in D. I'm sorry, it's very elusive. What's the language in D and how does it differ from A? Clearly and unmistakably erroneous? The evidence, excuse me, the regulatory language is service connection will be severed only where evidence establishes that it, meaning the grant of benefits, was clearly and unmistakably erroneous. You think there's something different between clearly and unmistakably erroneous and clear and unmistakable error? Those are just adverb forms of the same words. Well, they may be adverb forms of the same words, Your Honor, but we believe that the case law that has been developed about what constitutes a clear and unmistakable error is not the proper legal criteria for determining whether the evidence established whether or not the award was clearly and unmistakably erroneous. The standard should be here. I mean, the board looked at this and said, look, the original service award was wrong because this was a result of his own misconduct. You agree that you can't get service connection if the disability arises from the veteran's own misconduct, right? I do, Your Honor. And that's what the board found. But the problem is, is that finding is not consistent with the regulatory criteria of the secretary's regulation for what the burden of proof that was imposed upon the government is to be in order to lawfully sever. Can I just ask you to look at the board's decision at page 147 of the appendix? The board cites the applicable law and says service connection will be severed only where the evidence establishes that it is clear and unmistakable error. And it cites 38105B. What's wrong with that? That is the standard. All they did is leave off the LYs at the end of clearly, unmistakably, and erroneous. No, Your Honor. If you look at the underlying facts, as the lower court was required to have done, they would have recognized that there was no evidence submitted in support of the decision to sever. What happened in this case Are you saying there needed to be additional new evidence in support of the severance or that they could just look at the original application? No, no. Under D, they can look at either. But there must be evidence establishing that the original award was clearly and unmistakably erroneous. Wasn't the evidence in the file that the original award was wrong because this was the result of a drunk driving accident? No, Your Honor. That was the inference and the incorrect inference made by the Veterans Court. The record reflects that the proceedings were initiated vis-a-vis You're starting to talk about how the Veterans Court has applied this legal standard to the facts. You know we don't have jurisdiction over that. No, Your Honor. I'm asking this court to simply look at the record as it existed before the Veterans Court. And if I can quote what the Veterans Court said in its decision. That the board did assess the appellant's motor vehicle accident resulted from misconduct under the preponderance of evidence standard. Which is a clearly different legal standard than clearly and unmistakably erroneous. And that this was just one aspect of the board's overall decision. The board applied the three-step test for the RO's 2019 decision. And that three-step framework establishing Q is the correct legal standard. And that is simply incorrect. Let's assume we disagree with you about that. That when they say clearly and unmistakably erroneous in D. They're just using the same Q standard that we've talked about forever. Because honestly they're the same words. But, Your Honor, that's fundamentally unfair. Why? I mean it's a really high burden for the VA to establish Q. And they were not held to that burden. Well, can I ask you, let me see if I can drill down a little bit because I'm so a little confused. What do you think is the difference between the Q standard that we all know, the three-part standard, which the board clearly applied. Well, the Veterans Court's opinion, you know, there's parts of it dealing with the insomnia that may be different than the parts of programming the actual severance decision. We can get into that if we have to. But what do you think is the substantive legal difference between the three-part Q standard that we've known forever and what you think is different in D? Because in D, as opposed to A, there is no reference to evidence. A does not make any reference to evidence. It refers to a clear and unmistakable error made either in the application of law or in correctly applying the facts. Now, the D, which the Secretary wrote separately from A. Okay, but can I just stop you there? Yes. Because even though A doesn't specifically say evidence, clearly the Secretary has to have evidence to hold its decision under A, too. They can't just come in and say clear and unmistakable error because we think so. It has to be based. See, we all know this. Q has to be based on the evidence in the file. And so it has to be based on evidence. But that is the evidence that was in the file at the time of the decision. We've already established that under D, and the case law has established, that you can use evidence that wasn't in the file. And they did attempt to refer to evidence when they initiated this administrative decision. Okay, can I stop you again? They can use evidence that wasn't in the final to establish severance, sometimes because it came out after the fact or the right. But they don't have to, right? No, they do not have to. Did they do that here? Did they just look back in the file and say, oh, we blew this. There's evidence in the file that shows this was caused by his own willful misconduct. No, Your Honor. That evidence was not in the record. The government in its brief concedes that there was no line of duty determination made either by the military during his period of service. There was no express line of duty determination. But I don't think they conceded that the police report and the drunk driving evidence was in the record. And that's what made the initial implicit line of duty determination a clear and unmistakable error when they got around to reviewing it later. Isn't that what happened here? No, Your Honor. That's why I'm trying to direct the court's attention to the administrative decision found in the record at pages 64 to 66. This was a VA-initiated administrative proceeding, which was completely ex parte and made. What happened is your client, for better or worse, asked for an earlier service connection date in connection with an award he got. And that triggered some further review, and the RO determined, uh-oh, we made a clear and unmistakable error. This was willful misconduct. Isn't that what happened? But respectfully, Your Honor, they did so using the line of duty determination and the criteria under 38 U.S.C. 105A for rebutting that. And that criteria is based on a preponderance of evidence. And that's the only finding that is in this record as to whether or not there was a preponderance of evidence, not whether there was clear and unmistakable evidence. For the sake of argument, if that's what happened, do we have jurisdiction to do anything about that? You do, Your Honor, because of the way in which the Veterans Court made its decision. The Veterans Court said that that was permissible because of the Q framework in A. There is no Q framework in D. The framework in D is limited to evidence, and the only evidence was the administrative decision that relied upon a preponderance of evidence to rebut the presumption under 105 that this was willful misconduct. This is not a case in which the Secretary came forward and offered that evidence. Are you saying that because that initial RO decision didn't go through in fulsome analysis that there's not enough here? Because I've read the Burbs decision. It goes through in detail, applying a Q standard, looking at the file record and saying, the record shows that he was drunk, the accident was a result of his own misconduct, and it meets the Q standard. And that was the Board reviewing a decision that was required to be made under the criteria under D. The D criteria shifts the burden of proof to the Secretary. What the Board should have been reviewing was whether or not the Secretary met his statutory obligation to present clear and unmistakable evidence. And the Secretary did not do that to support the severance. This is a taking. This is a taking away of a granted benefit. A veteran should be entitled to the benefit of the presumption that the first decision was correct. We take it up a bunch with your time. I'll restore two minutes for rebuttal. Good morning, Your Honors. May it please the Court. There are some points made that we didn't necessarily draw from the briefing. I'm happy to address those if the Court has questions. Can I just get your initial reaction to the argument that somehow the clear and unmistakable error in 105A is different than clearly evidence showing that it was clearly and unmistakably erroneous in D? Is there any difference in the government's view? No, the government sees no difference in those, Your Honor. It's a Q standard. It's the same Q standard. The evidentiary and clearly legal error standard is the same. And even though A doesn't use the word evidence, you still have to show A. That's correct. Evidence for A. Yes, VA has to prove that there was, in fact, a clear and unmistakable error based upon the record. And as Your Honor pointed out, in a service connection severance case, that can include later developed evidence. Here, it did not. It was based purely on the record at the time. As the record showed, there was not a line of duty determination made originally. That came out when Mr. Cloud sought an earlier effective date. VA recognized the error. But when it did decline a duty determination in the first instance, and maybe this is where there's some confusion in the argument presented by Mr. Cloud, it wasn't applying the preponderance standard. The only thing that VA ever applied the preponderance standard to in this case was when Mr. Cloud was presented with the proposal to sever, he exercised his right, which he has under the regulation, to provide additional argument and evidence as to why severance was inappropriate. He did so by presenting a new argument, a new theory, that he suffered from insomnia and alcoholism based upon a tuberculosis treatment that was performed in service. That was a new argument, new evidence, and VA had an obligation to address that. As a new argument, it addressed it under the preponderance standard, which was entirely appropriate. But the original severance proposal, it didn't apply that, and he couldn't have known that that's what he would have argued. It was based upon the evidence in the record, which showed, obviously, he was intoxicated when he was driving, that was the cause of his accident, and that was the cause of his injuries, and VA just missed it. Is it fair to say that to get to that new evidence, there had to first be a determination under 3.105D that the Secretary proved clear and unmistakable error to support severance? We don't even get to the preponderance of the evidence and the new evidence unless that finding has first been made? That's correct, Your Honor. That's what the proper interpretation of 3.105D should be. It is. And how can we, for example, do we have jurisdiction to ask the question of, did that actually happen here? I think the only thing this Court could do is assess, did the Board actually apply that legal standard? If the question is, did the facts line up with that standard, that would be beyond the Court's jurisdiction. But we could answer the question of whether the Board applied that standard. You could, Your Honor, and we believe it's evident. If you could help me with that, because there's a number of references to preponderance of the evidence that I'm not sure the Board was as careful as you've tried to be. I would agree with that, Your Honor, admittedly. But I think we can see, if we look at the Board decision as a whole, that it is undertaking this sort of stepwise analysis that the regulation requires. Obviously, at Appendix 147, it clearly identifies the appropriate standard. Service connection will be severed if there is clear and unmistakable error of the burden of proof being on the government with the citation to 105D. And then if we look at the actual analysis, which begins at Appendix 150, the first thing the Board does is lay out the three-part test for Q, identify the failure to complete a line of duty determination in the original decision, state that that was obviously a legal error. It then looks at the evidence that was present in the record at the time, shows that there could be no reasonable disagreement that the evidence at the time showed that the vehicle accident was caused by Mr. Cloud's alcohol intoxication and his willful misconduct. And then it says that that manifestly changed the outcome, because if the regional office had appropriately considered the evidence in the record at the time, which was undisputable, it would have determined in the line of duty determination that this was not in the line of duty. That's the very first thing the Board does at Appendix 150 to 151. Then the Board addresses the new issue that Mr. Cloud presented in response to the proposal to sever, which is his claim was that his alcohol use was caused by a different in-service incident, which was this tuberculosis treatment. And the Board spends several pages weighing the evidence, taking all of the material that he provided, the other relevant medical evidence, and concludes under a preponderance standard that that is not true. And it was correct in the government's view to apply the preponderance standard and place that preponderance burden on Mr. Cloud at that point? Yes, Your Honor, because if we look at the regulation 3105A, which in our view is sort of the general categories of error, and then D talks about specific procedures for severance of prior service connection. But 105A says that all of these rules are talking about previous determinations, which are final and binding. And that's the heading as well, 3105 is revision of decisions. So all of this framework only happens, and it only conceptually makes sense, if you are reviewing a decision already made by the VA on some issue that has become final. Here, the argument that Mr. Cloud presented in response to the proposal to sever, that he had in-service tuberculosis treatment that caused insomnia and alcoholism, had never been presented. VA had never made a decision on that. It just doesn't make sense to say that VA was required to find an error in that decision that it never made. It's a new issue. And so it falls back to the default standards, the default burdens, and the preponderance evaluation. Now, where I think there may have been some confusion, admittedly, once we get to Appendix 156, when the Board is, by its own statement, summarizing its conclusions, it does loosely go back and forth between the preponderance language and the clear and unmistakable evidence language. And I think that's just the way it's written. I don't think it's as clear as it could have been. But it's only the concluding paragraph. Again, we have six pages of analysis that is doing the proper step-wise process here. And we think the Court can affirm on that basis. If the Court has no other questions. Thank you. Thank you. Mr. Kupferner, I'll give you two minutes. Thank you very much, Jim. If the Court would direct its attention to the February 6, 2019, rating decision, which severed the awards. And it's at Appendix 91 and 93. Actually, it begins earlier. Let me get the correct beginning citation. It begins at 90 and ends at 101. But in particular, I'd ask the Court to look at pages of the Appendix 91 and 93. And in those pages, the reference to the basis for the severance being made by the VA under D was made a determination that your motor vehicle accident was a result of willful misconduct as you were intoxicated at the time of the regulation per VA regulation. And then it cites the manual provision. Now, at that point, the only basis for the preceding determination was that there was a preponderance of evidence to rebut the 105A presumption that was relied upon presumptively by the rating decisions that granted these benefits to Mr. Clout. What did they say preponderance? I mean, the first paragraph of that section. No, no, no, no, no. I'm sorry. I was referring to the preponderance was the burden under 105 that is relied upon for what they are referring to as a line of duty determination. That administrative decision framed it as a line of duty determination. There is a statute at 105A which this court has found to be a presumption of service connection when the event takes place in service, which is precisely what happened here. Based upon that, the lower court should have afforded the benefit to Mr. Clout that those were presumptively regular inmate decisions of the agency the two times that he was awarded compensation. First, for a series of physical conditions. The government disagrees with you, but what the government can do, and what they did here, is show by clear and unmistakable error that that decision was incorrect. And throughout these papers, even what you just cited to us, the first paragraph under 2 says, service connection for PTSD is severed effective May 2019 due to a clear and unmistakable error. And clear and unmistakable error is not the legal standard or the burden of... Let's just assume you're using that argument, that clear and unmistakable error in A is the same thing as clearly and unmistakably erroneous in D. If that's the case, and again, there are tons of these decisions, sometimes there's imprecise language, but is it not the case that if you read the RO severance decision and the board's more detailed analysis, that it understood that it had to apply a Q standard to this? The fact that they understood it is not the issue, Your Honor. The question is, was there or wasn't there in the record clear and unmistakable evidence? That's not a question for us. As long as they're applying the right standard, whether they applied it correctly or not is an application of law and fact. But, Your Honor, respectfully, it is a question of interpretation of the regulation. 3.105D uses the word evidence. Okay, Mr. Harper, we have your argument. Thank you, Your Honor.